NEUMANN-ENDLER, INC. *v.* UNITED STATES (MAJESTIC FORWARDING & SHIPPING CO., PARTY IN INTEREST)[1]

---

[1] C. D. 43.

## United States Customs Court, First Division

(Decided October 10, 1938)

*Lamb & Lerch* (*John G. Lerch* of counsel) for the plaintiff.

*Charles D. Lawrence*, Acting Assistant Attorney General (*Marcus Higginbotham, Jr.*, and *Joseph F. Donohue*, special attorneys, and *Francis X. O'Donnell*, junior attorney), for the defendant.

*John R. Rafter* for party in interest.

*Black, Varian & Simon* filed a brief as *amici curiae*.

Before McCLELLAND, SULLIVAN, and BROWN, Judges; BROWN, J., concurring

McCLELLAND, Presiding Judge: This is what is commonly called an "American manufacturer's protest," filed under the provisions of section 516 of the Tariff Act of 1930 against the classification made by the collector of customs at the port of New York of imported wool hoods, claiming that such wool hoods, which in this case were imported by the Majestic Forwarding & Shipping Co., the party in interest, were wrongly classified under the provision in paragraph 1115 (b) of the Tariff Act of 1930 for—

Bodies, hoods, forms, and shapes, for hats, bonnets, caps, berets, and similar articles, manufactured wholly or in part of wool felt.

and as a consequence assessed with lower duties than those provided for by law.

The objections embodied in the protest are as follows:

Our objection to your action is based upon the contention that said wool hoods or other articles mentioned in paragraph 1115 (b) of the Tariff act of 1930 are dutiable at the higher rates provided for in said paragraph. More specifically, in addition to being dutiable at the rates above mentioned, said articles are subject to the additional rate of 12½ cents per article under the provisions of Treasury Decision 44715, modifying paragraph 1115 (b) of the tariff act of 1930. The pertinent provisions of the law are as follows:

Bodies, hoods, forms, and shapes, for hats, bonnets, caps, berets, and similar articles, manufactured wholly or in part of wool felt * * * if pulled, stamped, blocked, or trimmed (including finished hats, bonnets, caps, berets, and similar articles) * * *.

When the protest was finally called for hearing John R. Rafter, counsel for the party in interest, the importer, moved to dismiss it on the ground that it presented a moot question, since the issue as to whether wool hoods such as those in issue are classifiable under the provisions of paragraph 1115 (b), *supra*, had been passed upon in *Cohn & Lewis* v. *United States*, 25 C. C. P. A. 220, T. D. 49335, wherein it had been held that they were not so classifiable. Argu-

ment in opposition to the motion having been heard, the following ruling was announced through the writer:

Presiding Judge McCLELLAND: The court unanimously has reached a conclusion that for the present the motion to dismiss will be denied, with the right reserved to counsel to reargue the question in their briefs, but we will proceed to take the testimony now.

Upon mature consideration, the ruling denying the motion is adhered to.

During the course of the trial counsel for the party in interest made numerous objections to the receipt in evidence of documents bearing upon the regularity of the proceedings before the Secretary of the Treasury, and after due consideration thereof the court overruled the objections, the following statement being made for the record:

Presiding Judge McCLELLAND: The court has arrived at the conclusion that for the present the objections will be overruled and the papers, the exhibits for identification, admitted, and we will proceed to take the testimony with this reservation, that when the case is finally finished, and submitted, and taken up for consideration and decision, the question will be then fully reviewed, and the court will either confirm its action today or reverse it; for the present, however, the objections will be overruled.

After reconsideration the court affirms its ruling on the objections and the receipt in evidence of the papers.

In the course of the trial 17 witnesses were called by the plaintiff, and 21 by the party in interest, while 31 exhibits were offered by the plaintiff and received in evidence, and 38 by the party in interest. The record made consists of 1,716 pages and the trial occupied thirteen days.

The classification of merchandise apparently identical with that here in issue has been previously determined in a number of cases variously, but for the purposes of this case it may be said that the record evidence establishes beyond question that the hat bodies in issue are identical with those in the *Cohn & Lewis* case, *supra*. The sole issue involved in that case was whether such hat bodies were manufactured wholly or in part of wool felt within the meaning of paragraph 1115 (b) of the Tariff Act of 1930. The details of the processes of manufacture in the record presented to this court in that case were substantially identical with those testified to in the case at bar.

In its decision in the *Cohn & Lewis* case, *supra*, the Court of Customs and Patent Appeals held that the provision for "bodies, hoods, forms, and shapes, for hats, bonnets, caps, berets, and similar articles, manufactured wholly or in part of wool felt," contemplated that—

* * * there must have been felt before the hat bodies were manufactured, and if there was no felt as an independent entity, and the manufacture of the hats or hat forms and the felt proceeded simultaneously, then the bodies and shapes, etc., were not manufactured wholly or in part of wool felt.

The claim in the protest at bar is that the collector should have assessed the hat bodies in issue with an added duty of 12½ cents each as provided in said paragraph 1115 (b), as amended, for pulled and blocked hat bodies manufactured wholly or in part of wool felt. Such added duty, of course, may only be lawfully assessed on hat bodies manufactured wholly or in part of wool felt, and since the Court of Customs and Patent Appeals in the *Cohn & Lewis* case, *supra*, held that hat bodies which had been subjected to processes of manufacture such as produced the hat bodies in issue were not "manufactured wholly or in part of wool felt" within the meaning of paragraph 1115 (b), *supra*, we deem that conclusion controlling here, and it follows that the protest claim for the assessment of the additional duty must be overruled.

Judgment will issue accordingly.

### CONCURRING OPINION

Wool hoods similar to those involved in *Cohn & Lewis* v. *United States*, T. D. 49335, are outside the provisions of paragraph 1115 (b), Tariff Act of 1930, because not manufactured from wool felt first produced as a separate material felt. There is nothing in this record bearing upon that branch of the case tending to change that conclusion of the Court of Customs and Patent Appeals. Secondly, the pulling and blocking mentioned in the last clause of paragraph 1115 (b) refer only to a final process to give the article a distinct shape, size, and number which process was not used upon the articles before us, and they are therefore not subject to the extra duty of 12½ cents an article there stated as claimed by this domestic manufacturer's protest. This conclusion renders it unnecessary to decide whether the naming of Japanese hat bodies in the complaint, etc., while those designated for protest were from Italy, rendered the proceedings defective as the legal result would be in effect the same if that were true. So in all events the classification by the collector must stand and the protest be overruled as the issues shape themselves here.

BROWN, Judge: This suit against the United States was brought at New York under section 516 (b) of the Tariff Act of 1930, which gives a domestic manufacturer the privilege of contesting the amount of duty being levied upon his rivals' imported merchandise of a class or kind manufactured, produced, or sold by him after certain preliminaries and after a ruling by the Secretary of the Treasury against his claims for the levy of a higher rate upon his rivals' imported merchandise.

The merchandise the classification of which is at issue consists of wool hoods the preliminary stage of the manufacture of a hat. It was imported by the Majestic Forwarding & Shipping Co. as nominal consignee for the benefit of the ultimate consignee. The company intervened, as permitted by the statute, to defend the Government's classification.

The collector of customs took duty at the rate of 40 cents per pound and 55 per centum ad valorem under subdivision (b) of paragraph 1115 of the Tariff Act of 1930, which in form, as amended by Presidential Proclamation, 59 Treas. Dec. 639, T. D. 44715, now reads as follows:

(b) Bodies, hoods, forms, and shapes, for hats, bonnets, caps, berets, and similar articles, manufactured wholly or in part of wool felt, 40 cents per pound and 55 per centum ad valorem; and in addition thereto, on all the foregoing, if pulled, stamped, blocked, or trimmed (including finished hats, bonnets, caps, berets, and similar articles), *12½ cents* per article.

The plaintiff's protest (as described in its brief) is based upon the claim that the imported hat bodies of a class or kind similar to those manufactured by them have been pulled or blocked. It is claimed that the pulling occurs in the tip-stretching operation and that the blocking occurs after tip-stretching and before pouncing the hat bodies. These processes, it is claimed by the plaintiff, place the hat bodies beyond the condition described in the first clause of paragraph 1115 (b) of the Tariff Act of 1930, as amended by the President. Consequently, it is claimed by the plaintiff that the additional rate per unit as provided in the last provision of the Presidential paragraph 1115 (b) should be collected.

The plaintiff further contends that the hat bodies in question were manufactured of wool felt notwithstanding the holding in *Cohn & Lewis* v. *United States*, T. D. 49335, claiming that there was a wool felt in existence when the veil of so-called wool felt left the carding machine and before it was subjected to any subsequent shaping process.

The intervening importer defendant states the issue as follows:

1. Are the wool hoods in question described and provided for in subdivision (b) of paragraph 1115?
2. If so, are they "pulled, stamped, blocked, or trimmed" within the meaning of that provision?

As its primary defense to the protest the importer contends that the wool hoods in question are not "manufactured wholly or in part of wool felt," and, therefore, are not described or provided for in subdivision (b) of paragraph 1115.

As a second defense to the protest the importer contends that, even if the wool hoods in question were described and provided for in subdivision (b) of paragraph 1115, they are not "pulled, stamped, blocked, or trimmed" within the meaning of that provision.

The Government, the other defendant, takes the following position:

The United States does not dispute the decisions of the Secretary of the Treasury and the Collector of Customs ruling that the articles are not pulled and blocked. It has not actively opposed the protest because by such a position it would be contesting litigation designed to prove that the Government was entitled to more

duty on the importation at bar than it had received. However, it does dispute the defense of the importer based upon the assertion that the merchandise was not properly classified under paragraph 1115 (b).

There is also a serious contention on the part of the importer defendant that because the petition to the Secretary named wool hoods from Japan and the importations designated are wool hoods from Italy, the proceedings preliminary to this form of suit are defective and the protest should be dismissed. In view of our conclusions set forth hereafter it will be unnecessary to pass on the point as the result would be the same if we said the proceedings were defective or overruled the protests.

We will consider first the question whether the wool hoods in question are classified and provided for in subdivision (b) of paragraph 1115.

In the *Cohn & Lewis* case our court of appeals had before them a record much smaller than the unusually voluminous record now before us. Yet the essentials were all there. Thus the court of appeals' description of the processes involved in making this kind of wool hoods accurately covers the processes of manufacture of the similar wool hoods now before us, the only real difference being that the present record sets out the processes in greater detail and elaboration, the essentials of manufacture being the same.

A careful review of the typewritten record by the writer who also heard the testimony when taken shows this is so.

That statement by the court of appeals is as follows (T. D. 49335, November 22, 1937, at page 60, circular of January 13, 1938, Vol. 73, No. 2):

\* \* \* This wool mixture is first put into a mattress carding machine which combs and cleans the mixture and causes it to issue in the form of a wool mattress. It is then put into a second carding machine which throws off a thin veil of wool which is wound around wooden blocks, and which is called "the carded form of wool." As the web comes out of the second carding machine, it is evenly laid over a double cone-shaped form, from which, when completed, the hat forms may be taken by cutting the double cone form or bat in the middle. From the time of the second process forward, the hat form constantly goes through successive processes. The next step is a hardening process, or what is called the first felting operation. The next operation is a shrinking operation, shrinking and tightening the fibers. After that the material is shrunk and tightened by a bumping operation. The next operation is a dyeing process. Then follows another bumping operation which shrinks the hat form and tightens it. The next operation is a final tightening operation. Following this is an operation by which the tip of the hat form is stretched. The next process is a process of pulling the form onto a wooden block to give it shape. Finally, the form is dried and it is then shaved or pounded and is ready for its final use as a hat body.

The court of appeals held in unmistakable terms that articles manufactured in this fashion made in the same way as those before us are not manufactured of wool felt, following the settled customs rule that wool

felt must first be made as a separate material and the article manufactured from it, in order to be manufactured of wool felt, the statutory language used.

After reviewing the authorities the court says:

From these citations it is apparent that from the first session of this court it has been a uniform and well-settled holding that the language "made of" or "manufactured of" presupposes that the material of which the article is made or manufactured exists before the article itself comes into existence.

Therefore, they held that hat bodies such as these before us are outside of paragraph 1115 (b).

It seems to us that we are bound by the view of the court of appeals which holds unmistakably that hat bodies manufactured this way are not covered by paragraph 1115 (b).

The Government's present contention that that leaves nothing under paragraph 1115 (b), and that the court of appeals must, therefore, be in error, is not a new contention. It was urged in the *Cohn & Lewis* case before that court and overruled. The new record now before us does not bear out that contention. The conflict of testimony is sharp and the weight of the evidence before us clearly shows that numerous kinds of wool bodies can be made, and are made, from strips of felt directly and by various combinations of strips of felt with other material which would fall under paragraph 1115 (b).

So the contention of the Government falls, if it were material anyway which we very much doubt.

This brings us to the second contention of the intervening importe which would, if sustained, require us to overrule the protest irrespective of what has been heretofore stated. It is:

* * * are these hat bodies "pulled, stamped, blocked, or trimmed" within the meaning of the last clause of paragraph 1115 (b)?

The evidence on this point is again voluminous. The weight clearly shows that pulling and blocking are one and the same thing, stamping and trimming not being involved in the case.

Secondly, that the manufacturing process of pulling and blocking is a finishing process close to the finished hat.

This is borne out by the terms of the statute itself which places an extra tax of 12½ cents per article on "bodies, hoods, forms, and shapes for hats, bonnets, caps, berets, and similar articles * * * if pulled, stamped, blocked, or trimmed." A significant bracket is inserted reading as follows:

(including finished hats, bonnets, caps, berets, and similar articles).

This insertion shows, as plainly as language can express it, that the statutory pulling and blocking for which Congress intended to impose the extra duty was a process very close to, and immediately preceding, the completion of the hat body.

We therefore hold without hesitation that the blocking and pulling which Congress meant to tax with 12½ cents per article was the final process by blocking and pulling which gave the hat body its complete final shape and size and number, which process was not applied to these articles.

These conclusions require the classification to stand in all events.

Judgment will issue accordingly, overruling the protest.

As to the reservations at the trial concerning admitting evidence or exhibits subject to subsequent change in the ruling, the rulings as made are in each case adhered to and an exception noted for the losing party.

The above upon a subject regularly assigned to the writer was prepared as for a division opinion. Not being adopted by my associates it is now respectfully filed as a concurring opinion.